I N  T H E
U N I T E D  S T A T E S  C O U R T  O F  A P P E A L S
F O R  T H E  F O U R T H  C I R C U I T

_____

No. 22-4489

_____

U N I T E D  S T A T E S  O F  A M E R I C A,

*Appellee*,

v.

O K E L L O  T.  C H A T R I E,

*Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia at Richmond
*The Honorable M. Hannah Lauck, District Judge*

_____

R E S P O N S E  O F  T H E  U N I T E D  S T A T E S
I N  O P P O S I T I O N  T O  P E T I T I O N  F O R  R E H E A R I N G  E N  B A N C

_____

Jessica D. Aber
United States Attorney

Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
Eastern District of Virginia

Nicole M. Argentieri
Principal Deputy Assistant Attorney General

Josh Goldfoot
Deputy Assistant Attorney General

Nathan Judish
Senior Counsel, Computer Crime and
Intellectual Property Section
United States Department of Justice
1301 New York Ave., NW
Washington, DC  20530
(202) 616-7203

*Attorneys for the United States of America*

Table of Contents

Table of Authorities ......................................................................... ii

Introduction ....................................................................................1

Background ......................................................................................2

Argument.........................................................................................7

I.      En banc review is unnecessary because the panel faithfully applied
        Supreme Court and Fourth Circuit precedent...................................7

        A.      The panel decision is consistent with Supreme Court and Fourth
                Circuit precedent regarding short-term location information. ..............7

        B.      The panel decision is consistent with Supreme Court precedent
                regarding the third-party doctrine. ........................................12

II.     En banc review is unnecessary because this case does not present a
        question of exceptional importance.............................................15

Conclusion ....................................................................................17

Statement Regarding Rebriefing...........................................................19

Certificate of Compliance ..................................................................19

## Table of Authorities

**Cases**

*California v. Greenwood,* 486 U.S. 35 (1988) …………………………..……...15

*Carpenter v. United States,* 585 U.S. 296 (2018) ………..……….1, 7- 9, 11-13, 15

*Hoffa v. United States*, 385 U.S. 293 (1966) .........................................................15

*Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021) (en banc)…………………………………………….……...1, 9

*Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548 (9th Cir. 2022) …………………………………….……….……………...14

*United States v. Chatrie*, 107 F.4th 319 (4th Cir. 2024) ….….1, 7, 10, 11, 13, 14, 15

*United States v. Davis*, 109 F.4th 1320 (11th Cir. 2024) …………….…….2, 15, 16

*United States v. Dunn*, 480 U.S. 294 (1987) ……………………………….…...12

*United States v. Hammond*, 996 F.3d 374 (7th Cir. 2021) …………….…………11

*United States v. Karo*, 468 U.S. 705 (1984) ……………………….…………...10

*United States v. Knotts*, 460 U.S. 276 (1983) ……………………….…....10

*United States v. Miller*, 425 U.S. 435 (1976) ……………………………….…...15

*United States v. Smith*, 110 F.4th 817 (5th Cir. 2024) …………………….….2, 15

*United States v. Zelaya-Veliz*, 94 F.4th 321 (4th Cir. 2024) ……………..……...17

**Statutes**

18 U.S.C. § 2703 …………………………………………………………………16

ii

**Introduction**

The panel correctly affirmed the district court's denial of defendant-appellant Okello Chatrie's motion to suppress certain information that Google produced to the government in response to a "geofence" search warrant—specifically, two hours of location information about Chatrie's cell phone as he moved in public. *See United States v. Chatrie*, 107 F.4th 319, 322 (4th Cir. 2024). As the panel found, the government did not conduct a Fourth Amendment search when it obtained that information from Google, both because of Chatrie's limited privacy interest in that information and because Chatrie voluntarily disclosed that information to Google to obtain location-based services. *See id.* at 330-32. The panel faithfully applied Supreme Court and Fourth Circuit precedent, including *Carpenter v. United States*, 585 U.S. 296 (2018), and *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021) (en banc) (hereinafter, "*Leaders*").

Google geofence warrants direct Google to disclose location and identity information for cellular devices present in a specified place at a specified time. The two other federal appellate courts that have considered Google geofence warrants have split on whether a defendant had a protected Fourth Amendment privacy interest in location information disclosed pursuant to a geofence warrant, and thus on whether a geofence warrant effected a Fourth Amendment search. The Eleventh Circuit joined the panel in holding that a defendant lacked a protected privacy

1

interest in the fruits of a geofence warrant.  *See United States v. Davis*, 109 F.4th 1320, 1327-31 (11th Cir. 2024).  The Fifth Circuit disagreed, holding that a geofence warrant effected a Fourth Amendment search and that the warrant violated the Fourth Amendment, but it rejected suppression based on the good faith exception to the exclusionary rule.  *See United States v. Smith*, 110 F.4th 817, 830-40 (5th Cir. 2024).  Thus, Chatrie is not asking this Court to eliminate a circuit split.  Instead, he is asking this Court to switch sides in an existing circuit split over Fourth Amendment standing to challenge a geofence warrant.  Chatrie's petition for rehearing en banc should be denied.

## Background

1.      Chatrie held a cell phone when he carried out an armed robbery of a bank near Richmond, Virginia.  JA112, JA1444.  Investigators did not know Chatrie's identity, but they knew that Google could have information that would show that the robber's phone was in the area at the time of the robbery and would help identify the robber.  JA112-JA113.  A Virginia magistrate determined that there was probable cause to believe that Google possessed evidence of the robbery, and he issued a geofence search warrant.  JA114.

The geofence warrant specified a geographical area, identified as a circle with a radius of 150 meters around a specific latitude and longitude point near the bank.  JA117.  Through a three-step process, the warrant authorized disclosure of location

information over a two-hour interval (from 3:50 pm to 5:50 pm on the day of the robbery) from accounts associated with devices within this target area at some point during a one-hour interval that included the robbery (from 4:20 pm to 5:20 pm). JA116, JA117.  The warrant also authorized disclosure of specified customer identity information associated with these accounts, including usernames and email addresses.  JA117.

Investigators followed the three-step process set forth in the warrant. JA950-JA967.  In the first step, Google provided location data points for 19 accounts, including Chatrie's account, all within the 150-meter circle and during the hour of the bank robbery.  JA951-JA952, JA2000, JA2002, JA2098-JA2104. Google states that information in its Location History database is the only information it stores that is associated with specific users and is sufficiently granular to be responsive to a geofence warrant.  JA1558.[1]  To identify responsive information, Google ran a computation against all stored Location History coordinates to determine which ones matched the geofence parameters.  JA1559.

In the second step, Google produced two hours of location information (including information from outside the targeted circle) for nine of these accounts, including Chatrie's.  JA2006, JA2109-JA2129.  This information showed Chatrie's

---

[1] This brief describes Location History as it existed when the government obtained Chatrie's location information.

presence at the bank and his movement on public roads.  JA956-JA960, JA2008.  In the third step, Google disclosed subscriber information for three accounts, including Chatrie's.  JA960, JA2134-JA2137.  From this information, investigators identified Chatrie as the robber.  JA960-JA961, JA966-JA967.

2.     Google's Location History service is off by default; a user must explicitly opt in to the service.  JA1553.  In 2019, approximately one-third of active Google users had Location History enabled.  JA1555.  Google Location History allows users "to keep track of locations they have visited while in possession of their compatible mobile devices."  JA1552-JA1553.  The services Google offers to Location History users include "recommendations based on places they have visited," "help finding their phones," and "real-time traffic updates about their commutes."  JA1553.

Google also uses location in multiple ways for advertising purposes.  It uses "radius targeting," which targets ads to users based on their proximity to a particular business.  JA614.  It uses location information to measure "store visit conversions"—how many customers who saw a particular ad went on to visit a relevant store.  JA612-JA613.  It infers users' interests from where they visit, and it uses that "semantic location information" to target advertising to users.  JA1555.

A Google user may review, edit, or delete Location History information. JA1556.  A Google user may also stop collection of Location History information. JA833.

3.      On July 9, 2018, Chatrie opted in to the Location History service. JA1563.  On that date, a user could not opt in without following Google's "supported consent flow," a term that refers to the "the steps and consent text necessary to opt in" to the Location History service.  JA1564.  Under the supported consent flow, Google presented the user with the following text:

**Location History**

Saves where you go with your devices

This data may be saved and used in any Google service where you were signed in to give you more personalized experiences.  You can see your data, delete it and change your settings at account.google.com.

NO THANKS              TURN ON

JA1564.  Chatrie encountered this consent flow text and tapped "TURN ON." JA1566.

Along with this text, Google presented an expansion arrow that the user could tap to obtain additional information about Location History.  JA1565.   This expanded Location History text stated in part:  "This data helps Google give you more personalized experiences across Google services, like a map of where you've been, tips about your commute, recommendations based on places you've visited,

5

and useful ads, both on and off Google." JA1565. Google used this approach to avoid presenting users a "wall of text" they likely would not read. JA858.

4. The district court denied Chatrie's motion to suppress the fruits of the geofence warrant. The court declined to resolve whether Chatrie had a protected Fourth Amendment privacy interest in the information disclosed by Google. JA1361. Instead, the court held that the warrant violated the Fourth Amendment, but that suppression was inappropriate under the good-faith exception to the exclusionary rule. JA1364-JA1388. Chatrie subsequently entered a conditional guilty plea, preserving his right to appeal the denial of his geofence suppression motion. JA1428, JA1432.

5. A panel of this Court affirmed the district court's denial of Chatrie's suppression motion. The panel held that under *Carpenter* and *Leaders*, "Chatrie did not have a reasonable expectation of privacy in the two hours' worth of Location History data that law enforcement obtained from Google." *Chatrie*, 107 F.4th at 331. First, the government obtained only an "individual trip viewed in isolation" that did not reveal Chatrie's movements "within his own constitutionally protected space." *Id.* at 330 & n.17. Second, Chatrie voluntarily agreed to disclose his location information to Google after Google informed him that it would save where he went with his devices, that the data would be used by Google to give him personalized

6

experiences, and that he could view or delete his data or change his settings online. *See id.* at 331-32.

Judge Wynn dissented. He interpreted *Carpenter* as giving rise to "a new, multifactor test" for what constitutes a search, *Chatrie*, 107 F.4th at 344, 347 (Wynn, J., dissenting), and he concluded that the disclosure of Location History was a search under that test. *See id.* at 348-361. Judge Wynn also would have held that the warrant violated the Fourth Amendment, rejected application of the good faith exception, and suppressed the fruits of the warrant. *See id.* at 362 n.12.

## Argument

Rehearing en banc "is not favored." Fed. R. App. P. 35(a). Because Chatrie has not demonstrated that en banc consideration is "necessary to secure or maintain uniformity of the court's decisions" or that this case "involves a question of exceptional importance," *id.*, the Court should deny the petition.

## I.    En banc review is unnecessary because the panel faithfully applied Supreme Court and Fourth Circuit precedent.

### A.    The panel decision is consistent with Supreme Court and Fourth Circuit precedent regarding short-term location information.

The panel majority correctly held that Chatrie had no protected privacy interest in two hours of Location History information concerning his public movements. In *Carpenter*, the Supreme Court determined that individuals have a "reasonable expectation of privacy in the whole of their physical movements," and

7

it held "that accessing seven days of [a phone company's cell-site location information] constitutes a Fourth Amendment search." *Carpenter*, 585 U.S. at 310 & n.3.  The Court emphasized that its decision was "a narrow one," and it explicitly declined to determine whether there is a "limited period" for which the government can acquire cell phone location information without implicating the Fourth Amendment, or whether a cell tower dump constituted a search.  *Id.* at 310 n.3, 316.  In short, *Carpenter* recognized a privacy interest only in long-term, comprehensive location information.

*Carpenter*'s reasoning demonstrates that obtaining only two hours of location information does not infringe a protected Fourth Amendment interest. The Court framed the question before it as "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Carpenter*, 585 U.S. at 300.  *Carpenter* emphasized that long-term cell-site information created a "comprehensive record of the person's movements" that was "detailed" and "encyclopedic." *Id.* at 309.   It explained that "this case is not about 'using a phone' or a person's movement at a particular time." *Id.* at 315.  Rather, the Court explained, the case concerned "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Id.*

In *Leaders*, this Court confirmed *Carpenter*'s distinction between long-term and short-term location tracking. *Leaders* held that a Baltimore aerial surveillance program, under which the city collected and retained for at least 45 days a "record of where everyone came and went within the city during daylight hours," was a search under *Carpenter*. *Leaders*, 2 F.4th at 341, 346.[2] *Leaders* held that "*Carpenter* solidified the line between short-term tracking of public movements—akin to what law enforcement could do '[p]rior to the digital age'—and prolonged tracking that can reveal intimate details through habits and patterns." *Id.* at 341. Under *Carpenter*, "[t]he latter form of surveillance invades the reasonable expectation of privacy that individuals have in the whole of their movements and therefore requires a warrant." *Id.* The 45-day surveillance period was not short-term because it exceeded "ordinary police capabilities": "[p]eople understand that they may be filmed by security cameras on city streets, or a police officer could stake out their house and tail them for a time." *Id.* at 345.

---

[2] Chatrie attempts to minimize the extent of surveillance in *Leaders* by arguing that Baltimore police "were not at their desks perusing 45 days of aerial surveillance footage." Pet'n 15. As this Court recognized, however, the surveillance in *Leaders* was conducted by the government and allowed "photographic, retrospective location tracking in multi-hour blocks, often over consecutive days, with a month and a half of daytimes for analysts to work with." *Leaders*, 2 F.4th 342, 347. That data was "enough to yield a wealth of detail, greater than the sum of the individual trips." *Id.* (internal quotation marks omitted).

The panel correctly recognized that under *Leaders*, obtaining two hours of public movements constitutes "short-term tracking of public movements" rather than "prolonged tracking that can reveal intimate details through habits and patterns." *Chatrie*, 107 F.4th at 329. This "brief glimpse" was "plainly insufficient to offer insight into [Chatrie's] habits, routines, and associations." *Id.* at 336. Thus, applying *Leaders* to Chatrie's Location History information in this case "leads to a straightforward conclusion": the government "did not invade [Chatrie's] legitimate expectation of privacy by obtaining" that information. *Chatrie*, 107 F.4th at 335 (internal quotation marks omitted).

Chatrie argues that, although the geofence warrant did not actually reveal any of his private information, the Court should have considered whether two hours of Location History "could reveal" private information. Pet'n for Reh'g En Banc ("Pet'n") 13. This argument contradicts longstanding Supreme Court precedent. In *United States v. Knotts*, 460 U.S. 276, 280-85 (1983), the Supreme Court held that use of a transponder to track public movements was not a Fourth Amendment search. In contrast, in *United States v. Karo*, 468 U.S. 705, 714 (1984), the Court held that investigators conducted a search when they used a transponder to reveal information from a private space. Moreover, the Court recognized that the government might "have no way of knowing in advance whether the beeper will be transmitting its signals from inside private premises."

*Id.* at 718.  Thus, for short-term tracking, whether the tracking reveals non-public information is constitutionally significant.

Chatrie mistakenly argues that *Carpenter* focused on tracking "capabilities" rather than "specific facts," Pet'n 13, an approach that would effectively overrule *Knotts* and *Karo*.  He is wrong.  The Supreme Court in *Carpenter* did not conclude that the government conducted a search based on hypothetical possibilities. Instead, the Court held that "[m]apping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts." 585 U.S. at 311.  Thus, the Supreme Court found an actual intrusion into Carpenter's protected Fourth Amendment interests.  In contrast, whether a person maintains a privacy interest in short-term location information continues to require a case-specific analysis.  *See, e.g.*, *United States v. Hammond*, 996 F.3d 374, 392 (7th Cir. 2021) (finding that officers did not conduct a Fourth Amendment search under *Carpenter* when they "collected real-time [cell phone location information] for a matter of hours while the suspect travelled on public roadways").

Chatrie also argues that the panel erred in failing to properly consider the factors of the dissent's multifactor test.  Pet'n 11-14.  But the dissent's claim that *Carpenter* created a "new, multifactor test to be used to determine whether a government intrusion using digital technologies constitutes a search" flies in the face of *Carpenter* itself.  *Chatrie*, 107 F.4th at 344.  The dissent's assertion that *Carpenter*

11

marks "a '[s]ea [c]hange in Fourth Amendment jurisprudence" is contrary to the Supreme Court's declaration that *Carpenter* was a "narrow" decision.  *Chatrie*, 107 F.4th at 344; *Carpenter*, 585 U.S. at 316.  Had the Supreme Court wanted to create a new multifactor Fourth Amendment test, it would have said so explicitly.  *See, e.g.*, *United States v. Dunn*, 480 U.S. 294, 301 (1987) (creating multi-factor test to resolve Fourth Amendment curtilage questions).  It also would have said so explicitly had it wanted to overrule (or at least jettison going forward) its previous cases on tracking devices and the third-party doctrine.  The panel correctly recognized that the "factors" identified by the dissent did not create a new test for what constitutes a Fourth Amendment search.  *See Chatrie*, 107 F.4th at 333-34.  It also correctly recognized that when this Court applied *Carpenter* to novel location-tracking technology in *Leaders*, this Court did not suggest that *Carpenter* created a new, multifactor test.  *See id.* at 334.

**B.    The panel decision is consistent with Supreme Court precedent regarding the third-party doctrine.**

The panel majority correctly concluded that the third-party doctrine applies because "Chatrie voluntarily exposed his location information to Google by opting in to Location History."  *Chatrie*, 107 F.4th at 331.  Google informed Chatrie in simple, clear language about the key features of Location History:  that Location History "saves where you go with your devices," that the data is "saved and used in any Google service where you were signed in to give you more personalized

12

experiences," and that "[y]ou can see your data, delete it and change your settings at account.google.com." JA1564. Chatrie then opted in to storage of Location History. JA1566. The panel correctly concluded that "[a] user who accepts these terms cannot later claim he did not knowingly expose his information simply because Google didn't explain *exactly* how accurately it would save where he went or *exactly* how regularly it would obtain location data." *Chatrie*, 107 F.4th at 338.

Chatrie argues that *Carpenter* warned against "mechanically applying" the third-party doctrine, Pet'n 11, but the panel majority did no such thing. In *Carpenter*, the Supreme Court held that the third-party doctrine did not apply to a phone company's cell phone location information, but the Court did not reject the third-party doctrine. *Carpenter*, 585 U.S. at 315-16. Instead, *Carpenter* held that cell phone users do not voluntarily disclose their cell-site records to the phone company for three reasons: because the phone company collects cell-site information "without any affirmative act on the part of the user beyond powering up," because "there is no way to avoid leaving behind a trail of location data," and because carrying a cell phone "is indispensable to participation in modern society." *Id*. at 315. The panel correctly held that these reasons did not apply to Location History. *Chatrie*, 107 F.4th at 331-32. A user must opt in to Location History, and a user may turn off or delete Location History information. JA833, JA1553, JA1556. And as the panel recognized, that two-thirds of Google users have not opted in to storage

13

of Location History is "strong evidence" that Location History is not indispensable to participation in modern society.  *Chatrie*, 107 F.4th at 331.

Moreover, users do not store their Location History merely to keep a journal, as Chatrie suggests.  Pet'n 2.  Users store their Location History to receive a range of location-based services, including help with their commutes, help finding their phones, and relevant advertising.[3]    JA1553, JA 1555.    Unlike the cell-site information in *Carpenter*, which was a background byproduct of a communication service, location is the core information users disclose to Google to obtain location-based services.  *See, e.g.*, *Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548, 561 (9th Cir. 2022) (holding that renters of e-scooters voluntarily disclose their location to e-scooter company).  This Court should decline Chatrie's invitation to mechanically disregard the principle "that the Fourth Amendment does not prohibit

---

[3] Chatrie falsely asserts that Google does not use location to target advertising. Pet'n 14 & n.2.  Google uses location for radius targeting of ads and for measuring store visit conversions, which are functionally similar to geofences.  JA612-JA614. It infers users' interests from where they visit, and it uses that "semantic location information" to target advertising to users.  JA1553, JA1555.  Google may not reveal user location directly to businesses, but users lose their privacy interest in information they voluntarily disclose to Google, regardless of whether Google shares that information directly with others.

the obtaining of information revealed to a third party and conveyed by him to Government authorities." *United States v. Miller*, 425 U.S. 435, 443 (1976).[4]

## II. En banc review is unnecessary because this case does not present a question of exceptional importance.

The Court should deny the petition for rehearing en banc because additional considerations demonstrate that this case does not involve a question of exceptional importance. First, if this Court were to agree with Chatrie that he had Fourth Amendment standing to challenge the geofence warrant, it would not eliminate a circuit split—this Court would merely switch sides in an existing split. The Fifth Circuit in *Smith* agreed with the dissent and held that a defendant had Fourth Amendment standing to challenge a geofence warrant. *See Smith*, 110 F.4th at 836. However, the Eleventh Circuit in *Davis* agreed with the panel majority that a defendant lacked Fourth Amendment standing to challenge a geofence warrant. *See Davis*, 109 F.4th at 1327-1331. *Davis* held that *Carpenter* recognized a "reasonable expectation of privacy in the whole of [a person's] physical movements that may be implicated by near-constant electronic surveillance," and it concluded that the geofence warrant "doesn't implicate those Fourth Amendment concerns." *Id.* at

---

[4] Chatrie's assertion that this principle is limited to business records is incorrect. Pet'n 10. For example, it applies to statements made in the presence of an informant, *Hoffa v. United States*, 385 U.S. 293, 302 (1966), and to trash left on the curb for collection, *California v. Greenwood*, 486 U.S. 35, 40–41 (1988).

1330.  *Davis* acknowledged that a defendant might have Fourth Amendment standing if the government tracked him inside his home, but that hypothetical possibility did not matter because the government had not done so:  "to the extent the warrant returned information about someone's private property, it was not Davis's."  *Id.*  Finally, *Davis* agreed with the panel majority that Google filtering through its Location History database to identify records responsive to the warrant lacked Fourth Amendment significance.  *See id.* at 1331.

Second, Chatrie's assertion that the panel opinion will allow law enforcement access to Location History "without judicial check" is wrong.  Pet'n 6.  The Stored Communications Act does not allow law enforcement to compel disclosure of Location History without a court order or warrant.  *See* 18 U.S.C. § 2703.

Third, Chatrie's claim that the panel's reasoning applies to "emails, photos, and documents in a Google account" is erroneous.  Pet'n 8.  When Google stores or transmits user communications, users do not disclose the contents of their communications to Google in the way they disclose their location to obtain location-based services.  Indeed, Google makes clear that it does not use the content of Gmail even for advertising purposes.  *See* https://support.google.com/mail/answer/6603.  Furthermore, this Court has held that the government cannot "access someone's personal conversations and communications without meeting the warrant requirement or one of the Supreme Court's delineated exceptions to it."  *United*

*States v. Zelaya-Veliz*, 94 F.4th 321, 334 (4th Cir. 2024). *Zelaya-Veliz* involved Facebook communications, but its holding reaches emails, photos, and the contents of other private documents stored in a Google account.

## Conclusion

The Court should deny the petition for rehearing en banc.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Kenneth R. Simon, Jr.
Peter S. Duffey
Assistant United States Attorneys
Eastern District of Virginia

Nicole M. Argentieri
Principal Deputy Assistant Attorney
General

Josh Goldfoot
Deputy Assistant Attorney General

                    /s/
Nathan Judish
Senior Counsel, Computer Crime and
Intellectual Property Section
United States Department of Justice
1301 New York Ave., NW
Washington, DC  20530
(202) 616-7203

18

**Statement Regarding Rebriefing**

The United States believes that if this Court grants rehearing en banc, further briefing is unnecessary. Chatrie concedes that in his Reply, he addressed "at length" whether he had a protected privacy interest in his Location History information. Pet'n 19. He asserts that the panel refused to consider his "property interest" argument, Pet'n 19, but the panel majority correctly found it forfeited and explained that in the alternative, the Court would "reject it on the merits." *Chatrie*, 107 F.4th at 332 n.20.

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 3,900 words (and is specifically 3734 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, signature block, statement regarding rebriefing, and this certificate.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____
Nathan Judish