No. 22-4489

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
***Plaintiff/Appellee*,**

**v.**

**OKELLO T. CHATRIE,**
***Defendant/Appellant*.**

---

**On Remand From the**
**United States Supreme Court**

---

# APPELLANT'S SUPPLEMENTAL OPENING BRIEF

---

**MICHAEL W. PRICE**
**National Association of Criminal Defense Lawyers**
**Litigation Director, Fourth Amendment Center**
**1660 L Street NW, 12th Floor**
**Washington, DC 20036**
**(202) 465-7615**
**mprice@nacdl.org**

**GEREMY C. KAMENS**
**Federal Public Defender**

**LAURA J. KOENIG**
**PATRICK L. BRYANT**
**Assistant Federal Public Defenders**
**701 East Broad Street, Suite 3600**
**Richmond, VA 23219**
**(804) 565-0800**
**laura_koenig@fd.org**
**patrick_bryant@fd.org**

*Counsel for Appellant*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ II

INTRODUCTION ........ 1

BACKGROUND & PROCEDURAL HISTORY ........ 3

ARGUMENT ........ 5

I. STEP 1 WAS UNCONSTITUTIONAL ........ 6

A. Step 1 Authorized a Search of Every User's Location History Data ........ 7

B. Step 1 Lacked Probable Cause and Particularity ........ 12

C. Step 1 Was a General Warrant ........ 14

D. Step 1 Lacked Probable Cause and Particularity to Search 19 Users ........ 17

II. STEP 2 WAS UNCONSTITUTIONAL ........ 20

III. STEP 3 WAS UNCONSTITUTIONAL ........ 23

IV. THE GOOD-FAITH EXCEPTION SHOULD NOT APPLY ........ 24

V. IN THE ALTERNATIVE, THE CIRCUIT SHOULD REMAND TO DISTRICT COURT ........ 28

CONCLUSION ........ 30

CERTIFICATE OF COMPLIANCE ........ 31

APPENDIX A: *United States v. Chatrie*, 107 F.4th 319 (4th Cir. 2024) ........ SA 1

APPENDIX B: *United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (en banc) ........ SA 56

APPENDIX C: *Chatrie v. United States*, 609 U.S. ___, 146 S. Ct. 2193 (2026) ........ SA 119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Ohio Dep't of Youth Servs.*,
No. 23-3341, 2025 WL 2554965 (6th Cir. Sept. 2, 2025) .......... 29

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... 15

*Chatrie v. United States*,
609 U.S. ___, 146 S. Ct. 2193 (2026) .......... Passim

*Herring v. United States*,
555 U.S. 135 (2009) .......... 26

*Illinois v. Wardlow*,
528 U.S. 119 (2000) .......... 18

*Katz v. United States*,
389 U.S. 347 (1967) .......... 13

*Maryland v. Garrison*,
480 U.S. 79 (1987) .......... 13-14

*Messerschmidt v. Millender*,
565 U.S. 535 (2012) .......... 27

*Owens ex rel. Owens v. Lott*,
372 F.3d 267 (4th Cir. 2004) .......... 18-19

*Riley v. California*,
573 U.S. 373 (2014) .......... 1, 14, 24, 25

*Skinner v. Railway Labor Executives' Ass'n*,
489 U.S. 602 (1989) .......... 9-10

*Steagald v. United States*,
451 U.S. 204 (1981) .......... 15, 16, 25

*Steele v. United States*,
267 U.S. 498 (1925) .......... 20

*United States v. Ackerman*,
831 F.3d 1292 (10th Cir. 2016) .......... 10

*United States v. Carpenter*,
926 F.3d 313 (6th Cir. 2019) .......... 29

*United States v. Chatrie*,
107 F.4th 319 (4th Cir. 2024) .......... 1, 32

*United States v. Chatrie*,
136 F.4th 100 (4th Cir. 2025) .......... 1, 24, 32

*United States v. Christine*,
687 F.2d 749 (3d Cir. 1982) .......... 26

*United States v. Crozier*,
777 F.2d 1376 (9th Cir. 1985) .......... 26

*United States v. Curry*,
965 F.3d 313 (4th Cir. 2020) .......... 18

*United States v. Di Re*,
332 U.S. 581 .......... 8

*United States v. Doyle*,
650 F.3d 460 (7th Cir. 2011) .......... 28

*United States v. George*,
975 F.2d 72 (2d Cir. 1992) .......... 25

*United States v. Griffin*,
2026 WL 2357208 (4th Cir. Aug. 14, 2026) .......... 13, 18, 24, 28

*United States v. Hawkins*,
161 F.4th 242 (4th Cir. 2025) .......... 18

*United States v. Jacobsen*,
466 U.S. 109 (1984) .......... 11

*United States v. Jarrett*,
338 F.3d 339 (4th Cir. 2003) .......... 10

*United States v. Leon*,
468 U.S. 897 (1984) .......... 24, 25

*United States v. Medlin*,
842 F.2d 1194 (10th Cir. 1988)........................................................................25-26

*United States v. Minnick*,
2016 WL 3461190 (D. Md. June 21, 2016)............................................................... 26

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ............................................................................................... 15

*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*,
307 F.3d 137 (3d Cir. 2002)..................................................................................... 25

*United States v. Smith*,
110 F.4th 817 (5th Cir. 2024)...................................................................... Passim

*United States v. Winn*,
79 F. Supp. 3d 904 (S.D. Ill. 2015)........................................................................ 26

*Ybarra v. Illinois*,
444 U.S. 85 (1979) .............................................................................................18, 23

**Statutes & Other Authorities**

U.S. Const. amend. IV ........................................................................................... 13

Brief of *Amicus Curiae* Google LLC in Support of Neither Party, *Chatrie v. United States*,
No. 25-112, 2026 WL 624354 (U.S. 2026)........................................................ 12, 17, 27

Note, *Geofence Warrants and the Fourth Amendment*,
134 Harv. L. Rev. 2508 (2021)................................................................................. 11

Transcript of Oral Arg., *Chatrie v. United States,* No. 25-112, 2026 WL 1149434 (Apr. 27,
2026...............................................................................................................7, 8, 9

## INTRODUCTION

In *Chatrie v. United States*, 146 S. Ct. 2193 (2026), the United States Supreme Court held that "police officers invade a cell-phone user's reasonable expectation of privacy when they access his Location History." Supplemental Appendix ("SA") 131. "It does not matter," the Court clarified, "if the time period scrutinized was only two hours." *Id.* "Nor does it matter that the materials obtained were handed over by a third-party tech company." *Id.* And it did not matter that the data was supposedly anonymized. Simply put, the "police conducted a search when they gained access to Location History data." *Id.* at 122.

The Supreme Court did not decide, however, whether the multi-step geofence warrant authorizing the search was constitutional. *Id.* at 132. Instead, the Court vacated this Circuit's *en banc* judgment and remanded to "the Court of Appeals to decide whether, at each step of the search process, the warrant satisfied the Fourth Amendment's requirements of particularity and probable cause." *Id.* And following that determination, the opinion further instructed this Court to reconsider whether the good-faith exception to the exclusionary rule applies. *Id.* at 145 n.4.

The warrant in this case was unconstitutional from start to finish. Step 1 was a blind attempt to identify a suspect when investigators had none, akin to the "general warrants" and "writs of assistance" that sparked the American Revolution and spawned the Fourth Amendment. *See Riley v. California*, 573 U.S. 373, 403 (2014). The police conscripted Google to search millions of accounts without particularized probable cause for any of

them, including Mr. Chatrie's. Prior to the initial search, police had no idea who Mr. Chatrie was and no probable cause to access his Location History data. If they did, they would not have sought a geofence warrant.

Even if—as the government incorrectly contends—the government searched only the 19 accounts Google actually provided, there is still a lack of particularity and probable cause for those accounts. Steps 2 and 3 compounded these constitutional defects, authorizing police to obtain progressively more user data at their sole discretion, without establishing probable cause or involving a judge. As the Fifth Circuit concluded, such warrants "present the exact sort of 'general, exploratory rummaging' that the Fourth Amendment was designed to prevent." *United States v. Smith*, 110 F.4th 817, 837 (5th Cir. 2024). The Fifth Circuit thus correctly held that "geofence warrants are general warrants categorically prohibited by the Fourth Amendment." *Id.* at 838. At a minimum, this Court should hold that this geofence warrant was unconstitutional because it did not establish particularized probable cause for Mr. Chatrie and gave police unchecked discretion in Steps 2 and 3. *See* SA 133 (Jackson, J., concurring).

This Court should also hold that the good-faith exception to the exclusionary rule does not apply to general warrants like this one. At very least, it should hold that the absence of probable cause or nexus to Mr. Chatrie's account means that no reasonable officer could have relied on it. The technology may be novel, but the government knew what it was doing and should be deterred. In the alternative, Mr. Chatrie asks this Court to remand his case to the district court for a determination of the constitutionality of each

step as well as the good faith exception, consistent with the Supreme Court's ruling.

## BACKGROUND & PROCEDURAL HISTORY

Police had no suspects in a 2019 bank robbery, so they sought an "uncommon, multi-step" geofence warrant directing Google to search all user Location History data to identify users in a 150-meter radius of the bank. SA 132. The diameter of the circle was longer than three football fields and included a nearby church. *Id.* at 147 n.10. As the Supreme Court summarized, the warrant had three steps: Step 1 "authorized police [] to obtain location data for all cell phones inside the designated geofence within a one-hour timeframe." *Id.* This required Google to search every user with Location History enabled—"numerous tens of millions" of users—and led to Google return data for 19 users. *Id.* at 78 (Wynn, J. concurring), 124. Step 2 then "entitled the officers to obtain additional data (two hours, both inside and outside the geofence) for a subset of those phones—of the officers' own choosing." *Id.* at 132. Google produced more data for nine users. *Id.* at 124. And Step 3 "enabled [police] to obtain personal identifying information (including names, email addresses, and phone numbers) for a further subset—again of their selection," *id.* at 132, which they did for three users, including Mr. Chatrie.

Mr. Chatrie moved to suppress the fruits of the geofence, arguing that it was an unconstitutional general warrant, devoid of probable cause and particularity. The District Court "assume[d] for the sake of analysis" that a Fourth Amendment search occurred and found that the warrant lacked particularized probable cause to search the 19 users identified in Step 1. JA 1368. The court also held that Steps 2 and 3 gave the police

"*unbridled* discretion" and that the warrant was therefore insufficiently particularized. *Id.* at 1376. However, the court applied the good-faith exception and denied Mr. Chatrie's motion. *Id.* at 1381.

Mr. Chatrie entered a conditional guilty plea and appealed the denial of suppression to the Fourth Circuit. A divided panel affirmed the district court's denial of suppression on different grounds. App. 4. Judge Richardson, joined by Judge Wilkinson, concluded that no Fourth Amendment search occurred because Mr. Chatrie had no expectation of privacy in his Location History. *Id.* Judge Wynn dissented, writing that a search occurred, that the warrant was "so lacking in particularity and probable cause that it was invalid," and that "the good-faith exception does not apply because the warrant lacked any indicia of probable cause." *Id.* at 30, 44 n.12.

This Court granted Mr. Chatrie's petition for rehearing *en banc* and issued a *per curium* decision affirming only the judgment of the district court. SA 56-118. Nine judges wrote separate opinions. There was no consensus on whether a search occurred; the Court split 7-7 on that question, with Chief Judge Diaz declining to reach the issue.

Of the seven judges who found a privacy interest in Location History data, five (Judges Wynn, Thacker, Benjamin, Berner, and Gregory) also found that the warrant violated the Fourth Amendment. Six of the seven found that the good-faith exception applied, but Judges Harris and Heytens did so without assessing the warrant's constitutionality. Judge Gregory would have excluded the evidence and reversed Mr. Chatrie's conviction.

The Supreme Court granted a petition for a writ of *certiorari* and issued an opinion finding that Mr. Chatrie had an expectation of privacy in his Location History and that a Fourth Amendment search had occurred. SA 131. The Court vacated this Court's judgment and remanded to the Fourth Circuit "to address in the first instance" "whether the warrant satisfied the Fourth Amendment's probable cause and particularity requirements at each stage of the search process." SA 125. The Court also instructed the Fourth Circuit to "consider anew" "whether the good-faith exception to the exclusionary rule still allows the admission of the Location History data in this case." *Id.* at 145 n.4.

## ARGUMENT

The Supreme Court's decision fundamentally altered the posture of this case. Before *certiorari*, the primary issue dividing this Circuit was whether the search of Mr. Chatrie's Location History data constituted a Fourth Amendment search at all. The Supreme Court has resolved that threshold question decisively in Mr. Chatrie's favor. What remains is a question the Supreme Court expressly reserved: whether this geofence warrant satisfied the Fourth Amendment's probable cause and particularity requirements at each stage of the three-step search process. Significantly, the Court described the warrant as a multi-step search process and instructed this Circuit to examine the constitutionality of *each step* separately. SA 122 (the remaining question is "whether, given the warrant issued, the search here was reasonable, meaning that each of its steps was properly described with particularity and found to be supported by probable cause."); *id.*

at 132. The Court's instruction forecloses any notion that the warrant should be evaluated only as a whole; the validity of Steps 1, 2, and 3 must be scrutinized independently.

## I. Step 1 Was Unconstitutional

The Supreme Court's decision has important implications for *how* this Court should analyze the constitutionality of Step 1. Importantly, the Supreme Court clarified that *individual users* are the objects of a geofence warrant, as the district court assumed. *See* JA 1368. It held that law enforcement officers "conducted a search when they gained access to Location History data" because "*[a]n individual* has a reasonable expectation of privacy in records about his cell phone's location." SA 122 (emphasis added). Likewise, officers "invade *a cell-phone user's* reasonable expectation of privacy when they access his Location History." *Id.* at 131 (emphasis added). The relevant inquiry is not whether there was probable cause to search Google's computer servers or whether the warrant got the address right for Google's corporate office.

It was *individuals'* Location History data that police searched—not the geofence's geographical area, not "the Sensorvault," and not Google headquarters. Step 1 of the warrant authorized a search of the Location History data in "numerous tens of millions" of *individual* accounts, including Mr. Chatrie's. And following that initial search, police seized data belonging to 19 individuals. The warrant affidavit identified only Google's "computer servers" as the place to be searched and failed to establish probable cause to access Mr. Chatrie's account, let alone *every* user's account, or even 19 accounts. Because Step 1 did not particularly identify the place to be searched—Mr. Chatrie's account—but

instead authorized the search of millions of distinct accounts, without probable cause for any of them, it was unconstitutional.

### A. Step 1 Authorized a Search of Every User's Location History Data

At Step 1, the warrant in this case compelled Google to search every Location History account in its database. Google obliged by digitally peering inside every person's account to check whether they had Location History data within the geofence. This search is attributable to the government because they directed Google to do it. Although Google used a computer to rapidly search each account, computer searches are still searches whether they find something or not. Just as a warrant to search every apartment in a building based on suspicion that one contains evidence would be incompatible with the Fourth Amendment, so too was this one.

Justice Kagan demonstrated this point at oral argument, posing a physical-world analogy to frame the Step 1 search issue: A storage locker facility with 500 lockers and a manager who has "a relationship with the police chief so that the police chief can come to them and ask the storage locker manager to search all the storage lockers for particular things that the police chief needs." Transcript of Oral Arg., *Chatrie v. United States,* No. 25-112, 2026 WL 1149434, at *123-124 (Apr. 27, 2026) ("Tr."). Justice Kagan continued:

> So the police chief goes to the storage locker manager, and he says we're looking for somebody with a particular kind of weapon…a Glock. And—and the manager goes through each of the 500 lockers, and he comes back to the police chief and he says: I've got a list for you. We have eight lockers …that contain a Glock. And now we're going to have a further conversation, you and me, the manager and the police chief, about which of these eight you really want, all right? And they do that.

*Id.* at 124. The question was "how many of the lockers would you say have been searched and how should a warrant respond to that? In other words, have 500 lockers been searched?…[H]ave eight lockers been searched? Or have zero lockers been searched?" *Id.*

The government's response was telling: It "was a search of all of the lockers because someone went in and looked in every single locker." *Id.* at 126. Mr. Chatrie emphatically agrees. Applying this principle here, law enforcement, through Google, searched millions of individual users at Step 1, just as the manager searched all 500 lockers at the police chief's request. Likewise, the list of eight lockers produced is analogous to the 19 users identified by Google in Step 1. The only difference is that Google produced more than a list. It also produced some of the locker's contents, here in the form of a spreadsheet detailing an hour's worth of Location History for each individual. Based on the Court's opinion, it is clear that the government searched millions of Google accounts by peering inside to see if they had relevant data, just like the manager's search for a Glock. That general search infringed on millions of individuals' expectation of privacy.

It would be error to confuse the millions searched with the 19 individuals who later had their Location History data seized. To reason otherwise requires ignoring that a search takes place even if police don't find what they're looking for. As the Supreme Court explained, "Whether something is a search does not depend on what it finds." SA 129 (citing *United States v. Di Re*, 332 U.S. 581, 595) ("[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts"). After all, an officer "cannot know the fruits of a given surveillance in advance." *Id.* The warrant was either constitutional at its

outset, or it was not. The answer cannot depend on the number of devices that Google happened to identify. Such an approach would be "foreign to the way the Fourth Amendment works." *Id.* The search started when Google was compelled to access millions of accounts, not when police received the results. *See id.* at 120 ("Where the Fourth Amendment applies, it applies—regardless of 'the quality or quantity of information' the government obtains").

### 1. <u>Google Acted as a Government Agent</u>

The Supreme Court's ruling overrides any claim that Step 1 was not a search simply because Google ran the scan. *Cf.* SA 111 (Berner, J., concurring). As the Court explained, "[n]or does it matter that the materials obtained were handed over by a third-party tech company." SA 131. Step 1 was a search of millions because Google was acting as a "government agent," just like the storage locker manager. "[W]hat happened here[,]" as Justice Gorsuch noted, was a search that "transpire[d] when government officials enlist[ed] private parties in that task." SA 136. Because the government enlisted Google as its agent to digitally comb through its accounts, "[t]he scope of a search" *does* "depend on what a company's compliance officer incidentally encounters—but never discloses to law enforcement." *But cf.* SA 111 (Berner, J., concurring). In other words, when a "compliance officer" searches all users at the behest of police, they are conducting a Fourth Amendment search of those users, even if they do not find incriminating evidence.

Starting with *Skinner*, the Supreme Court has been explicit that a search is attributable to the government when it is the product of the government's

"encouragement, endorsement, and participation." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 615-16 (1989); *see also United States v. Jarrett*, 338 F.3d 339, 344-46 (4th Cir. 2003). That was the case here; although a Google employee was responsible for inputting the relevant search terms and collecting the outputs, Google did not do so on its own or for any independent business purpose. Rather, the government encouraged, endorsed, and participated in that search: it served a search warrant on Google and compelled Google's compliance. Google was not acting on its 'own initiative,' but as the government's agent. *See* JA 1204-1205.

Google was not somehow less of a government agent because it searched under command of a judicial warrant. *See* Tr. at 125. On the contrary, more than a request from the police chief, the geofence warrant was an official demand, a signed command requiring Google to comply and search millions of individuals. This non-optional order directly exerts government authority, even more than some searches required by statute. *See United States v. Ackerman*, 831 F.3d 1292, 1301-1302 (10th Cir. 2016) (finding that the National Center for Missing and Exploited Children was a government agent for Fourth Amendment purposes). In short, Google's actions were indistinguishable from the government's for Fourth Amendment purposes.

The Fifth Circuit reached the same conclusion in *United States v. Smith*, reasoning that the initial search cannot be irrelevant to the Fourth Amendment inquiry simply because Google, rather law enforcement, presses the buttons. *See* 110 F.4th at 838 n.12. A contrary conclusion would be "breathtaking" because it would allow law enforcement to

"flaunt the Fourth Amendment by simply offloading their act of 'searching' on to a third party, waiting to see if that third party's search produces any fruit before applying for a warrant." *Id.* On the contrary, "all of Google's actions, including at Step 1," were "conducted in response to legal compulsion and with the participation or knowledge of a governmental official." *Id.* (cleaned up) (citing Note, *Geofence Warrants and the Fourth Amendment*, 134 HARV. L. REV. 2508, 2516 (2021)). "Accordingly," the Fifth Circuit concluded, "law enforcement must abide by the Fourth Amendment not only when Google provides them with a final list of names, but also when they instruct Google to search its entire Sensorvault to produce those names." *Id.*

If anything, the existence of a warrant makes it even clearer that the government conscripted Google to conduct this search. This was not a private search that the government sought to replicate. *Cf. United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Google had no independent or business reason to search for individuals who happened to be around the bank in Richmond. JA 40, 439-440. They had not compiled or disclosed such a list for advertisers, nor would they have done so.[1] It was nothing like handing over a business record from a cabinet, but instead required a novel, sweeping, and "intrusive" search of millions of individuals' private data, the disclosure of which is prohibited by both statute and contract absent valid legal process commanding Google to act. Brief of

[1] As Google explains, advertisers never obtain individuals' Location History data. Instead, Google uses its own de-identified, "aggregate models" to target advertisements for businesses and improve Google Maps. App. 83, 88; JA 787-88, 825 ("no way do we share, and never have we shared, explicitly that I went to a specific place with a third party.").

*Amicus Curiae* Google LLC in Support of Neither Party, *Chatrie v. United States*, No. 25-112, 2026 WL 624354, *26, *38-42 (U.S. 2026) ("Google Amicus").

At the time of the warrant here, Google stored "all Location History data in the cloud, rather than on a user's device." SA 123. But as the Supreme Court recognized, "that choice makes no real difference." *Id.* As if to demonstrate this point, Google deleted the Sensorvault and started storing all Location History data on individual devices. App. 61 n.5 (Diaz, C.J., concurring), 87 n.1 (Richardson, J., concurring). So, to conduct a Google geofence warrant today, the government would have to get separate warrants for every single cell phone with Location History enabled, just to peek inside each one to see if it has relevant data. The impossibility of such a feat highlights how overbroad and unsupported Step 1 really was.

### B. Step 1 Lacked Probable Cause and Particularity

The warrant affidavit did not mention Mr. Chatrie or any of the millions of users searched in any way. It did not state that Mr. Chatrie was a suspect in the robbery or offer any facts on which it would be possible to draw that conclusion. It did not establish any nexus between his Location History data and evidence of the crime in this case. As the Fifth Circuit recognized, "this search is occurring while law enforcement officials have *no idea* who they are looking for, or whether the search will even turn up a result." *Smith*, 110 F.4th at 837. This absence of probable cause is conspicuous because if police did have reason to search Mr. Chatrie's data, they could have obtained it specifically with a normal warrant. *Chatrie*, 146 S. Ct. at 2201 ("There are usually better ways to investigate an already-

known suspect—like seeking only his location data."). The urge to search everyone is an admission that there was probable cause to search no one, including Mr. Chatrie.

It also occurred without particularity. The Fourth Amendment requires that a warrant "particularly describe the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. But the warrant here did no such thing. It identified the place to be searched as "Google LLC," JA 134, saying only that evidence would be found "within computer servers maintained or controlled by Google." JA 130. It did not identify Mr. Chatrie's account or any *particular* account, just as it did not establish probable cause that evidence would be found in his account. *See Smith*, 110 F.4th at 837 ("While the *results* of a geofence warrant may be narrowly tailored, the *search* itself is not.").

Because the Supreme Court found an individualized expectation of privacy in Location History data, it is not enough to simply identify Google's headquarters or Google's servers as the place to be searched, any more than it would be acceptable to name the storage locker company or say, "within storage lockers maintained or controlled by the company." The Fourth Amendment "protects people, not places," *Katz v. United States*, 389 U.S. 347, 351 (1967), and the particularity requirement cannot countenance a search of millions of accounts in the hopes that incriminating data would be found somewhere on Google's servers. *See United States v. Griffin*, 2026 WL 2357208, at *7 (4th Cir. Aug. 14, 2026); SA 109 (Berner, J., concurring) ("The government cannot, for example, search every unit in an apartment building because it has probable cause to believe that some unknown part of the building holds evidence of a crime."); *cf. Maryland*

*v. Garrison*, 480 U.S. 79, 88 n.13 (1987) (upholding warrant when police mistook the number of dwellings in a building, but "expressly distinguish[ing] the facts of this case from a situation in which the police know there are two apartments on a certain floor of a building, and have probable cause to believe that drugs are being sold out of that floor, but do not know in which of the two apartments the illegal transactions are taking place").

Just as a warrant authorizing a search of a storage locker or apartment requires the unit to be identified with particularity, the search of a Google account requires the account to be identified with particularity based on probable cause that evidence is in that account. The government cannot declare "Google" as the "place to be searched," JA 127, 134, and obtain a warrant to search millions of accounts on the theory that one of them has probative evidence. On that logic, the government could claim that someone's Gmail account contains an incriminating phrase, obtain a single warrant identifying "Google" as the place to be searched, and make Google identify all accounts with emails containing that phrase. That cannot be right.

### C. <u>Step 1 Was a General Warrant</u>

The total absence of probable cause and particularity in this warrant were not mistakes or mere technical defects—they were the main draw for police in an investigation with no suspects. And following the Supreme Court's decision, there can be no doubt that this digital dragnet was a modern-day general warrant.

The animating purpose of the Fourth Amendment was to prevent general warrants and writs of assistance. *See Riley*, 573 U.S. at 403. These instruments of oppression "noted

only the object of the search" and left officials completely free to search any place where they believed such goods might be." *Steagald v. United States*, 451 U.S. 204, 220 (1981). General warrants were primarily a concern in England, where government officials would conduct the searches directly. Across the Atlantic, where the Crown lacked similar manpower, British customs officers would force civilians to assist in the searches, similar to Google's role here. They were called "writs of assistance" because they "commanded 'all officers and subjects of the Crown to assist in their execution.'" *United States v. New York Tel. Co.*, 434 U.S. 159, 180 n.3 (1977) (Stevens, J., dissenting). And they were so reviled that they "helped spark the Revolution itself." *Carpenter v. United States*, 585 U.S. 296, 303-04 (2018).

The Supreme Court's decision solidifies the conclusion that the warrant here was the digital equivalent of those loathsome, illegal searches. Because *Chatrie* attributes the privacy interest in Location History to individuals, Step 1 is properly understood as a search of each individual who had Location History enabled, *i.e.*, "numerous tens of millions" of individual Google users. SA 78 (Wynn, J., concurring). But when the Circuit last considered this case, some members did not see Step 1 this way, blending the scope of the initial search with the geographic and temporal restrictions on the data to be seized. *See* SA 63 (Diaz, C.J., concurring) (police "limited the places to be searched—both by geography and time—as well as the location information to be seized"), 68 (Wilkinson, J., concurring) (the "warrant here was closely confined to a particular time, place, and incident), 70 (Niemeyer, J., concurring) ("Law enforcement did not collect the data from

the person" which was also "limited to the time and place of the crime"), 100 (Berner, J., concurring) (Step 1 was not a search because "of the (1) short duration of the request, (2) limited size of the geofenced area, and (3) public nature of the geofenced area").

But the Supreme Court was clear that a search occurs the moment police "access" users' Location History data, whether they find something or not. This means that, regardless of the size of the geofence or the length of time, Step 1 necessarily involves the search of millions, conducted by Google at the government's command. Viewed through this lens, the similarity to general warrants and writs of assistance is undeniable. It specified only the "object of the search" and left police completely free to access any account they chose. *Steagald*, 451 U.S. at 220. As the Fifth Circuit recognized, this is the "quintessential problem" with geofence warrants: "they never include a specific user to be identified, only a temporal and geographic location where any given user may turn up post-search." *Smith*, 110 F.4th at 837. "That is constitutionally insufficient." *Id.*

The Fifth Circuit was therefore correct to hold that geofence warrants are categorically unconstitutional because they present the "exact sort of 'general, exploratory rummaging'" as the general warrants of old. *Smith*, 110 F.4th at 837. As the court explained, "Step 1 forces the company to search through its entire database," *i.e.*, "through the entirety of its Sensorvault—all 592 million individual accounts—for all of their locations at a given point in time." *Id.* So, they are "'[e]mblematic of general warrants' and are 'highly suspect per se.'" *Id.* at 838. Even Google wrote an amicus brief describing the uniquely broad sweep of geofence warrants, saying that they are "unlike traditional

warrants, which target an identified suspect based on probable cause" and instead "operate in reverse" because law enforcement lacks a suspect. Google Amicus, 2026 WL 624354, at *4.

In short, the warrant is a close sibling of the general warrants and writs of assistance that gave rise to the Fourth Amendment. SA 35 (Wynn, J., dissenting) ("[A] [geofence] warrant is uncomfortably akin to the sort of 'reviled' general warrants used by English authorities that the Framers intended the Fourth Amendment to forbid."). Technology may change, but the constitutional requirements of probable cause and particularity have not. Even in the digital age, a warrant that notes "only the object of the search" and leaves police "completely free to search any place"—here, any account—is a general warrant.

### D. Step 1 Lacked Probable Cause and Particularity to Search 19 Users

Even if Step 1 was not a general warrant, and the only individuals searched were the 19 returned by Google, the warrant still lacked probable cause and particularity to search those 19. The warrant did not establish any nexus between those individuals and the crime and therefore didn't establish probable cause to access their data. At most, the affidavit establishes probable cause that there was evidence in *some user's account*, but there was no probable cause that Mr. Chatrie's account or any of the others contained relevant evidence.

The government cannot bootstrap its way to probable cause based on the 19 individuals' presence in the geofence for two reasons. First, as discussed above, probable cause cannot be predicated on the result of the search. As the Fifth Circuit put it, "[a]

general warrant cannot be saved simply by arguing that, after the search has been performed, the information received was narrowly tailored to the crime being investigated." *Smith*, 110 F.4th at 837. The warrant demonstrated no likelihood that relevant data would be found in any single account, including Mr. Chatrie's. As the district court concluded, the "warrant simply did not include any facts to establish probable cause" and was "completely devoid of any suggestion that all—or even a substantial number of—the individuals searched had participated in or witnessed the crime." JA 1369.

Second, "the Fourth Amendment does not permit suspicion by geography." *Griffin*, 2026 WL 2357208, at *6. There was not a "fair probability" that "contraband or evidence of a crime" would be found in Mr. Chatrie's account or anyone else's merely because they were *near* the robbery. One's "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Indeed, one's mere presence in a "high crime area" is not even sufficient to create reasonable suspicion of criminal activity. *United States v. Hawkins*, 161 F.4th 242, 247 (4th Cir. 2025) (citing *United States v. Curry*, 965 F.3d 313, 330 (4th Cir. 2020) (en banc) and *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

While there are circumstances where the government need not identify the names of the individuals whose information is to be searched and seized, such "all persons" warrants are still bound by the dual constraints of particularity and probable cause. They require "probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 276 (4th Cir.

2004). But the warrant here made no such representation about every user inside the geofence. As the district court determined, "the warrant lacked any semblance of such particularized probable cause to search each of its nineteen targets, and the magistrate thus lacked a substantial basis to conclude that the requisite probable cause existed." JA 1365; *see also* App. 112 (Berner, J., concurring) (assuming that if Step 1 is a search, then "[o]btaining a warrant would require probable cause to search all individuals who fall within a particular geofence," which would be "unlikely").

Indeed, the size, location, and time of the geofence made it obvious that it would ensnare individuals for whom there was no suspicion of criminal conduct. As the district court emphasized, "it is difficult to overstate the breadth of this warrant, particularly in light of the narrowness of the Government's probable cause showing." JA 1369. Based solely on the fact that the robber was holding a cell phone, "law enforcement simply drew a circle with a 150- meter radius that encompassed the Bank, the entirety of the Church, and the Church's parking lot." *Id.* Furthermore, because Location History data can have large "confidence intervals" (i.e., margins of error), the warrant was likely to—and in at least one instance did—identify individuals who were not inside the geofence but instead driving nearby, eating at the nearby restaurant, at home in their nearby apartment complex, or staying at the hotel just north of the bank. *Id.* Moreover, the warrant sought data for a full 60 minutes during rush hour on a Monday evening, hardly a time when only people involved in the crime were likely to be around.

Compounding this absence of probable cause was a complete lack of particularity

in identifying any of the 19 individuals in Step 1. For a warrant to satisfy the particularity requirement, it must describe the place to be searched such that "the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). Here, that means identifying the *particular accounts* to be accessed. This is not to suggest that the government must always know a suspect's name. But a particularized warrant must point to a particular account; even JohnDoe1@gmail.com would suffice. While specifying the time and size of the geofence may clarify the evidence that police seek to seize, it does nothing to clarify the places/accounts to search. Thus, the warrant's description of the search—essentially, "whoever's accounts contain data within the geofence"—provided insufficient information for the executing officer to know whose accounts to access. The only way to make that determination was by conducting the search first, but such an approach is the opposite of particularity and anathema to the Fourth Amendment. A warrant is either sufficiently particularized when the judge signs it, or it is not. Here, it was not.

## II. <u>Step 2 Was Unconstitutional</u>

While the government structured its demand to Google as a three-step process, there was only one warrant. That warrant had to satisfy the probable cause and particularity requirements for Step 1 and the searches in Steps 2 and 3. It did not. At Step 2, the warrant authorized police to obtain an additional hour of Location History for individuals "of the officers' own choosing," and without the confines of the geofence. SA 132. Step 2 was neither supported by probable cause nor constrained by particularity.

The warrant did not establish probable cause to access the nine accounts selected for Step 2 scrutiny. At the time it issued, neither the police nor the magistrate knew which accounts would be subjected to this expanded search. SA 109 (Berner, J., concurring) ("When the detective applied for the geofence warrant, it would have been impossible for him to describe the facts that would ultimately support his decision to conduct a Fourth Amendment search targeting nine particular individuals."). This defect is fatal because the existence of probable cause must be determined at the outset by the "deliberate, impartial, judgment of a judicial officer." SA 131-32.

Probable cause cannot exist on the promise to emerge later. And at the time this warrant issued, there was no probable cause to search anyone's Location History data—not millions, not 19, not nine, and not Mr. Chatrie's. *See* SA 133 (Jackson, J., concurring) ("In my view, it is clear that at a minimum the second and third stages of the search process here did not satisfy this foundational requirement."). The Fourth Amendment cannot tolerate warrants that seek to search first and find suspicion later. Such reverse warrants flip the Fourth Amendment on its head and are plainly unconstitutional.

The district court correctly recognized that Step 2 gave police "*unbridled* discretion" at Step 2, with no "semblance of objective criteria" on how to narrow the list of users. JA 1376. The decision was up to police, at their discretion. *See* SA 115 ("Detective Hylton had unbridled discretion to determine who would be subject to intrusive and expansive searches."). The warrant "contain[ed] no language objectively identifying *which* accounts for which officers would obtain further identifying information," no "objective guardrails

by which officers could *determine* which accounts would be subject to further scrutiny," and no limit on "the *number* of devices for which agents could obtain identifying information." JA 1376. In other words, Step 2 placed no limit on the government's discretion and therefore lacked particularity as to Mr. Chatrie. Per the district court, "[e]ven if this narrowing process cured any of the warrant's shortcomings as to particularized probable cause, this process cannot independently buttress the warrant for an entirely separate reason: *clear lack of particularity*." *Id.* (emphasis added).

This Court should agree and find that the warrant did not offer objective criteria by which accounts would be selected from the 19 individuals in Step 1. On this front, "the warrant said very little." SA 132 (Jackson, J., concurring). It said, "*In toto*: They would 'attempt to narrow down the list by reviewing the time stamped location coordinates for each [device] and comparing that against the known time and location information that is specific to this crime." *Id.* But "there was no explicit requirement that they do so," *id.* at 133, and they did not do so—until Google made them.

In fact, police initially tried to get Step 2 data on *all* 19 individuals from Step 1, as the government maintains they were entitled to do. *See* JA 1368-69 ("Astoundingly, the Government claims that law enforcement established probable cause to obtain all information (Steps 1, 2, and 3) from all users within the geofence without any narrowing measures."). And in the end, it was Google who wound up negotiating with police, talking them down from 19 to nine, in a dutiful attempt to imitate a magistrate. *See id.* 1354-55.

Still, no matter how well-intentioned, "[p]robable cause determinations cannot be delegated to private entities." SA 111 (Berner, J., concurring).

### III. Step 3 Was Unconstitutional

At Step 3, police obtained personal details for three individuals, all of whom were completely unknown to police when the warrant issued. As in Steps 1 and 2, the warrant did not identify or establish probable cause to search the accounts at Step 3. Consequently, Step 3 fails for the same reasons.

The warrant did not establish probable cause to search Mr. Chatrie's data at Step 3, or for any of the three accounts. Like Steps 1 and 2, it did not show that Mr. Chatrie's Location History data would hold probative evidence, or that Mr. Chatrie had a Google account at all. There was no way to explain at the outset why police "would eventually search the Location History data of certain, then-unknown users in Google's dataset". SA 111 (Berner, J., concurring). Simply put, there was no probable cause to search Mr. Chatrie without relying on the warrant's prior unconstitutional access to his data. *Id.* As in Step 2, it "would have been impossible" to describe the facts leading to target these three individuals." *Id.* at 109.

Step 3 authorized police to obtain personal identifying information for a further subset of their unsupervised selection. But "[o]nce again, the warrant stated only that officers would 'attempt to narrow down the list,' without setting forth any criteria for doing so." SA 133 (Jackson, J., concurring). The warrant did not identify the accounts subject to Step 3 access, nor did it explain the process to identify those accounts. As such,

it was impossible, based on the warrant, to tell which accounts would be searched at Step 3. The warrant gave police complete and unchecked discretion, contrary to the particularity requirement—something the Supreme Court explicitly told this Court to consider on remand when evaluating Steps 2 and 3. *Id.*

## IV. <u>The Good-Faith Exception Should Not Apply</u>

This Court should find that the good-faith exception to the exclusionary rule should not apply. As a matter of law, it has no place where the government relies on a general warrant. The whole point of the Fourth Amendment was to prohibit general warrants and writs of assistance. *See Riley*, 573 U.S. at 403. Moreover, under *United States v. Leon*, 468 U.S. 897, 923 (1984), the warrant was also so plainly lacking in probable cause and facially deficient of particularity that no officer could have reasonably relied on it. *See Griffin*, 2026 WL 2357208, at *9; *Chatrie*, 136 F.4th at 161 (Gregory, J., dissenting) ("[W]hen seeking digital evidence, officers must demonstrate at least the same level of supporting information necessary to justify the search of physical places and things."). Consultation with prosecutors should not inoculate police and suppression is appropriate because this was not a one-off bad warrant, but one of thousands of similar warrants, designed and encouraged by prosecutors who knew or should have known full-well what they entailed.

Mr. Chatrie previously briefed these arguments before this Court, *see* ECF 22 at 22-49 & ECF 48 at 19-23, and fully adopts and incorporates them here. But following the Supreme Court's decision and other recent caselaw, the analysis has shifted in Mr. Chatrie's favor. Both the district court and this Court did not analyze Step 1 as the search

of millions of individual accounts that it was. This Court should reevaluate the good-faith exception in this light and firmly reject it here.

The Supreme Court's decision now makes it clear that this geofence warrant was a general warrant because it authorized the search of millions of individual accounts while specifying "only the object of the search." *Steagald*, 451 U.S. at 220. The quantity and quality of the Location History data did not matter, nor did the so-called anonymization. App. 128. But because most members of this Circuit did not conceive of Step 1 in this way, they also did not address whether the good faith exception should apply to a general warrant. Only Judge Gregory recognized that Step 1 "amounted to a general warrant" and would have held that the good faith exception did not apply. SA 115 (Gregory, J., dissenting). Judge Gregory was correct and this Court should join his analysis on remand.

The Supreme Court established the good-faith exception to the exclusionary rule in 1984, almost two centuries after the Fourth Amendment was ratified. *Leon*, 468 U.S. at 897. Such a recent rule must not be read to erode the absolute prohibition on general warrants that inspired not only the drafting of the Fourth Amendment, but in many ways the founding of this country. *See Riley*, 573 U.S. at 403. Consequently, there must be no such thing as relying on a general warrant in good faith. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002) (finding general warrants to be "so plainly in violation of the particularity requirement that the executing officers could not have reasonably trusted in its legality"); *United States v. George*, 975 F.2d 72, 77-78 (2d Cir. 1992); *United States v. Medlin*,

842 F.2d 1194, 1199 (10th Cir. 1988); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985); *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982) ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."); *see also United States v. Minnick*, 2016 WL 3461190, at *5 (D. Md. June 21, 2016) (considering the good-faith exception's applicability to suppression after rejecting the claim that what issued was a general warrant); *United States v. Winn*, 79 F. Supp. 3d 904, 926 (S.D. Ill. 2015) ("Because the warrant is a general warrant, it has no valid portions.").

To hold otherwise would invite the kind of "systematic error" and "reckless disregard of constitutional requirements" that the Supreme Court has cautioned against. *Herring v. United States*, 555 U.S. 135, 144 (2009). Indeed, this was not a one-off mistake by a well-meaning detective. It was a pattern of behavior by law enforcement for years, based on a process that the government designed with Google. *See* JA 1344 (describing how the whole concept of a geofence warrant, from Steps 1 to 3, was developed by the Department of Justice Computer Crime and Intellectual Property Section in consultation with Google). The government knew full well what it was doing. It therefore rings hollow to excuse conduct on the grounds that the warrant was "novel."

In fact, Google began receiving geofence warrants in 2016, and by 2020, reported that they constituted more than 25% of all warrants they received in the United States.[2]

[2] Google, "Supplemental Information on Geofence Warrants in the United States," https://services.google.com/fh/files/misc/supplemental_information_geofence_warrants_united_states.pdf.

*See* SA 123 ("Google received its first geofence warrant in 2016. … Two years later, it received 982; and two years after that, more than 11,000"). Even following the district court's 2022 decision finding the warrant here unconstitutional, Google reported receiving "thousands of overbroad geofence warrants around the country," many of which "swept in hundreds, sometimes even thousands, of innocent people." Google Amicus, 2026 WL 624354, at *4. This Court should recognize that law enforcement's conduct here was not isolated, but deliberate, recurring, and systemic.

While *Herring* focused on systemic negligence in the failure to maintain a database, the negligence here occurred by normal operation of the government's design. For these reasons, neither the new technology nor the "dearth of court precedent" is a reason to apply the good faith exception. SA 63 (Diaz, C.J., concurring). It is not acceptable to "cry 'novelty' and 'technological change' as an excuse for a fundamental departure from our constitutional principles," especially when the warrant was not drafted by a lone detective but engineered by prosecutors in a specialized DOJ unit. SA 117 (Gregory, J., dissenting). The prosecutors consulted here were not providing a dispassionate or even perfunctory review of the warrant's constitutionality; they were responsible for its design. Their involvement should therefore not immunize law enforcement's conduct here. *See Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012) ("And because the officers' superior and the deputy district attorney are part of the prosecution team, their review also cannot be regarded as dispositive."). This Court should therefore decline to apply the good-faith exception to deter law enforcement from seeking such general warrants in the future.

Finally, even if this Court disagrees that this was a general warrant, it was at minimum so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Doyle*, 650 F.3d 460, 463 (7th Cir. 2011). As Judge Wynn recognized, the fact that the robber had a cell phone is no justification for such a broad search, even if one considers just the geographic reach of the geofence. SA 44 n.12 (Wynn, J., dissenting). And now, with the benefit of the Supreme Court's decision, it is clear that probable cause was also required for each of the millions of accounts searched in Step 1. Yet the warrant failed to identify a single account, let alone establish a factual nexus between an account and the crime. In the physical world, the police could not "search every unit in an apartment building because it has probable cause to believe that some unknown part of the building holds evidence of a crime." SA 109 (Berner, J., concurring). The same holds true for Google accounts containing private Location History. It follows that police could not access Mr. Chatrie's data (or anyone else's) unless the affidavit supplied facts that made his account a probable location for relevant evidence. *See Griffin*, 2026 WL 2357208, at *7. It did not even come close, and so a reasonable officer could not have relied on it in good faith.

## V. <u>In the Alternative, the Circuit Should Remand to District Court</u>

Should this Court think that resolving the issues identified by the Supreme Court depends on factual issues that are not clear on the record, the Circuit can remand to the district court. Indeed, the district court may be best suited to conduct the required step-by-step inquiries for this Court's later review. While the Supreme Court directed this

Circuit to address the constitutionality of the warrant and the good faith exception "in the first instance," SA 125, this Court is free to take the case and remand it again down to the district court. *See, e.g.*, *Ames v. Ohio Dep't of Youth Servs.*, No. 23-3341, 2025 WL 2554965, at *1 (6th Cir. Sept. 2, 2025); *Groff v. Dejoy*, No. 21-1900, ECF No. 55, at 1 (3d Cir. Aug. 1, 2023). This is perhaps the most prudent course of action where, as here, the Supreme Court's decision requires an entirely new application of complicated facts to major constitutional questions. *Cf. United States v. Carpenter*, 926 F.3d 313, 314 (6th Cir. 2019) (conducting a straightforward application of good faith on remand because the government had relied on a then-valid statute).

No Court has evaluated the constitutionality of the warrant following the Supreme Court's instructions to consider each of the three steps independently. No court has done so with the full understanding that individuals have a reasonable expectation of privacy in their Location History data, such that a valid warrant is required for all of Step 1. Although the district court correctly assumed that users were the "functional subjects" of the warrant, JA 1368 n.35, its analysis focused on the "unbridled discretion" afforded to police in Steps 2 and 3, rather than the generalized digital dragnet at Step 1. *Id.* at 1365. And when the court did address Step 1, it elided the initial search of "numerous tens of millions" with the 19 users who had their data seized by police, *id.* at 1331, 1365. Similarly, neither the district court nor this Court addressed Google's role as a government agent in conducting the initial Step 1 search. And finally, no court conducted a good-faith inquiry based on a stepwise analysis or determined if good faith applies to a geofence warrant

because it is akin to a digital general warrant. Given the Supreme Court's demand for careful reconsideration of the warrant's steps and good faith, this Court would benefit of a fully informed district court decision to review.

## CONCLUSION

For all the reasons stated above, this Court should either find that each step of the geofence warrant was unconstitutional and that the good-faith exception does not apply, or in the alternative, remand to the district court for reconsideration.

Respectfully submitted,

MICHAEL W. PRICE
National Association of Criminal
Defense Lawyers

s/ Michael W. Price
Michael W. Price
National Association of Criminal
Defense Lawyers
Litigation Director, Fourth
Amendment Center
1660 L Street NW, 12th Floor
Washington, DC 20036
(202) 465-7615
mprice@nacdl.org

GEREMY C. KAMENS
Federal Public Defender

s/ Laura J. Koenig
Laura J. Koenig
Patrick L. Bryant
Assistant Federal Public Defenders
701 East Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0800
laura_koenig@fd.org
patrick_bryant@fd.org

Dated August 31, 2026

## CERTIFICATE OF COMPLIANCE

1. This supplemental brief has been prepared using Word for Office 365 software, Garamond font, 14-point proportional type size.

2. The body of this petition, exclusive of the case caption, title, and signature block, contains no more than 30 pages.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

August 31, 2026
Date

s/ Michael W. Price
Michael W. Price
NACDL Fourth Amendment Center

## SUPPLEMENTAL APPENDIX

Appendix A: *United States v. Chatrie*, 107 F.4th 319 (4th Cir. 2024) .................................. 1

Appendix B: *United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (en banc) ................ 56

Appendix C: *Chatrie v. United States*, 609 U.S. ___, 146 S. Ct. 2193 (2026) ................. 119